IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RUSSELL K. OGDEN, ET AL.,

    **Plaintiffs,**

    v.

**PETE FIGGINS,** In his Official Capacity as Sheriff for Wilson County, Kansas,

    **Defendant.**

Case No. 2:16-CV-02268-JAR

## MEMORANDUM & ORDER

Plaintiffs Russell K. Ogden, Beatrice Hammer, and John Smith filed this class action asserting claims, individually and on behalf of others similarly situated, under 42 U.S.C. § 1983 for declaratory and injunctive relief against Defendant Pete Figgins in his official capacity as Sheriff of Wilson County, Kansas. Plaintiffs allege that Defendant's postcard-only mail policy is an unconstitutional violation of the First and Fourteenth Amendment rights of inmates at the Wilson County Correctional Facility and their friends and family members. In an Order dated July 19, 2016,[1] the Court preliminarily approved the parties' proposed Settlement Agreement and Consent Decree ("Agreement").[2] After notice to Settlement Class members and a fairness hearing, the Court now considers the Agreement for final approval and entry. Because the Court finds that the Agreement is fair, reasonable, and adequate, it adopts and enters the Agreement.

**I.**     **Factual and Procedural Background**

On April 28, 2016, Plaintiffs filed this class action suit challenging Defendant's postcard-only mail policy as an unconstitutional violation of the First and Fourteenth Amendment rights

---

[1] Doc. 26.

[2] Doc. 25-1.

of inmates and their friends and family members. Plaintiffs, whose family members are incarcerated at the Wilson County Correctional Facility in Fredonia, Kansas, allege that the jail's policy of prohibiting inmates and their correspondents from sending letters enclosed in envelopes and requiring them to instead conduct all correspondence on pre-paid U.S. Postal cards impermissibly restricts inmates and their outside correspondents from exercising their right to communicate in writing in violation of the First Amendment. Plaintiffs further contend that the jail's postcard-only policy violates the due process protections of the Fourteenth Amendment because it does not afford either the sender or the intended recipient any notice of a rejected communication or provide them with an opportunity to challenge that determination.

In an Order dated August 4, 2016, the Court certified the Settlement Class as follows:

> All current and former outside correspondents who wish to write letters to, and/or receive letters from, inmates in the Wilson County Correctional Facility and who are subjected to or affected by the Postcard-Only Mail Policy.[3]

On November 8, 2016, the parties filed a Joint Notice of Settlement,[4] and on June 16, 2017, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement,[5] which included the Agreement reached by the parties.

The Court reviewed and preliminarily approved the terms of the Agreement on July 19, 2016, with instruction to give notice to the Settlement Class.[6] The Notice proposed by the

---

[3] Doc. 11 at 5. This case is similar to a previous prisoner civil rights class action lawsuit before Judge Melgren of this District, *Jackson, et al. v. Ash*. In that case, brought by the same Plaintiffs' counsel, Judge Melgren issued a final Memorandum and Order approving a class action settlement on February 23, 2105. *Jackson, et al. v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835 (D. Kan. Feb. 23, 2015). In the *Jackson* case, plaintiffs sought declaratory and injunctive relief pursuant to § 1983 to enjoin the Wyandotte County Sherriff from enforcing a postcard-only mail policy at the Wyandotte County Adult Detention Center. The case involved two plaintiff classes, one comprised of inmates and one comprised of outside correspondents.

[4] Doc. 21.

[5] Doc. 25.

[6] Doc. 26.

parties and adopted by the Court included a brief explanation of the lawsuit, a description of the proposed terms of the Agreement, instructions for objecting, and the date of the final fairness hearing. Members of the Settlement Class received notice by a posting in each pod and visitation area at the Wilson County Detention Center, publication in the *Wilson County Citizen,* and by posting on a website associated with the Wilson County Sheriff's Department. Notice was posted and published in both English and Spanish. Settlement Class members were given 60 days to object. The Court received no objections. Following the end of the objection period, the Court held a fairness hearing under Federal Rule of Civil Procedure 23(e)(2) on October 25, 2017.

## II.     Analysis

Federal Rule of Civil Procedure 23(e) authorizes a court to approve a class action settlement after notice, a hearing, and "on finding that [the settlement] is fair, reasonable, and adequate." Tenth Circuit courts determine whether a proposed settlement is fair, reasonable, and adequate by considering:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.[7]

The evidence presented to the Court supports approval and adoption of the Agreement.

---

[7] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)).

First, the Court finds that the parties fairly and honestly negotiated the Agreement. "With regard to this first factor, the Court is concerned with the protection of class members whose rights may not have been given 'adequate consideration during the settlement negotiations.'"[8] The Court is to "ensure that the agreement is not illegal, a product of collusion, or against the public interest."[9] "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'"[10] The record demonstrates that the Agreement is the result of cooperative, good-faith, and arms'-length negotiation by skilled counsel who are familiar with litigating civil rights claims. The Agreement was reached following both parties' deliberate consideration of the action's merits and uncertainties and a balancing of Plaintiffs' constitutional rights with Defendant's legitimate security interests in operating the jail. The Agreement does not provide preferential treatment to class representatives or segments of the Settlement Class, and constitutes a complete resolution of all claims against Defendant by all Plaintiffs. The Court is convinced that the first factor favors approving the Agreement.

Under the second factor, the Court must examine "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt. The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation."[11]

---

[8] *McNeely v. Nat'l Mobile Healthcare, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *11 (W.D. Okla. Oct. 27, 2008) (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997)).

[9] *Id.* at *11 (quoting *United States v. Colo.*, 937 F.3d 505, 509 (10th Cir. 1991)).

[10] *Ashley v. Regional Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Trust Fund*, Civil No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)).

[11] *Id.* at *6 (quoting *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009)).

In this case, the parties appropriately estimate that serious legal and factual uncertainties obscure the ultimate outcome of this action. Both parties possess valid legal arguments and a large body of favorable evidence. As counsel indicated at the fairness hearing on October 25, 2017, authority does not definitively resolve the constitutionality of Defendant's postcard-only mail policy. Neither the United States Supreme Court nor the Tenth Circuit has directly addressed the issue. Those courts that have evaluated the constitutionality of postcard-only policies remain divided.[12] The unresolved nature of this legal issue undermines any certainty regarding the outcome of this litigation. The second factor therefore favors approving the Agreement.

Under the third factor, the Court must examine whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation.[13] The Court is satisfied that the Agreement provides meaningful, immediate recovery to all Settlement Class members that might otherwise be unrecoverable after a decision on the merits. The Agreement addresses the two core concerns of all class members—privacy and length of correspondence. Plaintiffs allege that Defendant's postcard-only policy unconstitutionally limits the content and amount of their speech to the material that one can comfortably and legibly disclose on the exposed back of a postcard. Plaintiffs further allege that this policy has so effectively restricted their ability to communicate meaningfully that the policy interferes with their fundamental right to free speech. By permitting envelope correspondence that allows for an unlimited number of pages and letters, the Agreement enhances the privacy and length of communications between

---

[12] *See Jackson, et al. v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835, at *2 n.13 (D. Kan. Feb. 23, 2015) (discussing divided authority on constitutionality of postcard-only mail policies).

[13] *See id*. at *2 ("The value of the settlement must be weighed against 'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'") (quoting *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006)); *see also Lopez v. City of Santa Fe*, 206 F.R.D. 285, 292 (D. N.M. 2002) (finding value of immediate injunctive relief through settlement outweighed possibility of future relief where "[p]laintiffs could not have received a better resolution had there been protracted litigation").

Settlement Class members and jail detainees. As such, the additional privacy and permitted length of correspondence represent a substantial gain for Settlement Class members.

Further, the Court finds that immediately securing these gains is worth forgoing the expense and uncertainty of further litigation. For the reasons discussed under factor two, it is likely that ultimately resolving this case would require further motions, possibly trial, and almost certainly appeals. Not only would further litigation delay Settlement Class members' relief for a substantial period of time, but the ultimate resolution of this case may forever deny them any relief. Considering the division of authority on the constitutionality of postcard-only mail policies, Plaintiffs risk much in pursuing a decision on the merits. This risk is unmitigated, moreover, by the uncertain prospect of obtaining more meaningful relief. The Court is therefore satisfied that the third factor also favors approving the Agreement.

Under the fourth factor, the Court must evaluate whether the parties believe that the settlement is fair and reasonable. In doing so, the Court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."[14] "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable."[15] Here, both parties endorse the Agreement as justly resolving Plaintiffs' claims. In addition to saving both parties the expense and efforts of further litigation, the Agreement represents a compromise of both parties' interests. As discussed above, the Agreement reforms the jail's mail policy to accommodate Settlement Class members' demands for more private and lengthy correspondence. But the

---

[14] *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983); *see also Marcus v. Kan. Dept. of Revenue*, 209 F.Supp.2d 1179, 1183 (D. Kan. 2002) ("Counsel's judgment as to the fairness of the agreement is entitled to considerable weight"); *Lopez*, 206 F.R.D. at 292 (noting that "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel") (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

[15] *Marcus*, 209 F. Supp. 2d at 1183 (citing *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993)).

Agreement also preserves the jail's security interests by: 1) providing that Defendant may restrict the volume of mail sent or received when there is clear evidence that such correspondence threatens jail safety or regards the conducting of criminal activity; 2) prohibiting inmates from corresponding with other inmates or with individuals listed as non-contact by a court or law enforcement agency; and 3) maintaining Defendant's authority to regulate the content of envelope correspondence.  The Agreement also limits Defendant's exposure to Plaintiffs' attorneys' fees, which are recoverable by a prevailing party in a suit brought pursuant to 42 U.S.C. § 1983.[16]  Specifically, the record shows that Plaintiffs' counsel significantly reduced their attorneys' fees to gain this settlement, recovering well below a reasonable lodestar amount with fees of less than $100 per hour.  This is a significant concession by Plaintiffs to Defendant.  For all of these reasons, the Court finds that these compromises confer fair and reasonable benefits to both parties that might be lost in the absence of settlement.  Thus, the fourth factor also supports the Agreement.

Finally, the Prison Litigation Reform Act ("PLRA") requires that, before approving a class settlement in a prison conditions case, the Court must find that the proposed relief "is narrowly drawn."[17]  Under PLRA, relief is narrowly drawn if it "extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."[18]  In determining whether the proposed relief is narrowly drawn, "the court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."[19]  The Court finds that the

---

[16] 42 U.S.C. § 1988.

[17] 18 U.S.C. §§ 3626(a)(1), (c)(1).

[18] 18 U.S.C. §§ 3626(a)(1).

[19] *Id*.

Agreement corrects the alleged constitutional violations caused by Defendant's postcard-only policy through narrowly drawn means. Under the Agreement, envelope correspondence is a necessary means of relief. Although screening envelope correspondence for contraband requires additional jail resources, screening envelope correspondence is minimally intrusive under the Agreement's terms. Further, the Agreement maintains the safety-based limitations on prison correspondence discussed above to protect the jail's security interests. Thus, the Agreement complies with PLRA.

In conclusion, the Court finds that the Agreement proposed by the parties is fair, reasonable, and adequate. For the preceding reasons, the Agreement is approved. The Court adopts and enters the Agreement as part of the judgment in this case and instructs the Clerk of the Court to dismiss Plaintiffs' claims with prejudice.

**IT IS THEREFORE ORDERED** that the parties' Settlement Agreement and Consent Decree (Doc. 25-1) is hereby **approved** under Federal Rule of Civil Procedure 23(e)(2) and is **entered** as part of the judgment in this case.

**IT IS FURTHER ORDERED** that according to Federal Rule of Civil Procedure 41(a)(2), plaintiffs' claims are **dismissed with prejudice**.

Dated: November 2, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE